ISAAC T. PRESTON, EXECUTOR OF JAMES BROWN, DECEASED, PLAINTIFF IN ERROR, *vs.* RICHARD R. KEENE, DEFENDANT IN ERROR.

Louisiana. A paper was executed by R. R. K., of the city of New Orleans, stating that the grantor, for, and in consideration of, a certain lot or parcel of land, (describing it,) conveyed and transferred to J. B. and S. B. all his right, title, and interest in a certain tract or parcel of land, (describing it,) hereby warranting and defending unto the said J. B. and S. B. all his right and title in the same, and unto all persons claiming under them. The paper called, under the laws of Louisiana, "An Act of Sale," was signed by R. R. K., J. B., S. B., and a notary of New Orleans; and was deposited in the office of the notary. This was not "an exchange," according to the laws of Louisiana; and J. B. and S. B. did not, by accepting the transfer of the property made by the same, and signing the paper, incur the two obligations imposed on all vendors by the Civil Code—that of delivering, and that of warranting, the lot of ground sold to R. R. K.—and did not thereby become liable for the value of the property stated in the said "Act of Sale" to have been given for the property conveyed thereby.

"Exchange," according to the Civil Code of Louisiana, imports a reciprocal contract; which, by article 1758 of that Code, is declared to be a contract where the parties expressly enter into mutual agreements.

An exchange is an executed contract: it operates, per se, as a reciprocal conveyance of the thing given, and of the thing received. The thing given or taken in exchange must be specific, and so distinguishable from all things of the like kind as to be clearly known and identified. Under the Civil Code of Louisiana, the exchanger who is evicted has a choice either to sue for damages, or for the thing he gave in exchange. But he must first be evicted, before his cause of action can accrue.

IN error to the Circuit Court of the United States for East Louisiana.

In May, 1838, in the Circuit Court of the United States for the Ninth Circuit and Eastern District of Louisiana, Richard Raynal Keene filed his petition against Isaac T. Preston, as executor of James Brown, deceased, alleging that, by virtue of a notarial contract, made in New Orleans, on the 21st day of August, 1807, the said James Brown and his brother, Samuel Brown, also since deceased, became bound for a valuable consideration, &c., to convey and deliver to the petitioner a lot of ground of specific dimensions, containing seven thousand two hundred square feet, situated in or upon the New Orleans or Gravier batture.

The case was argued by Mr. Crittenden and Mr. Clay for the plaintiff in error; and by Mr. Jones and Mr. Key for the defendant.

· The decision of the Court having been made, principally, on the facts of the case, the arguments of the counsel are not stated.

The case was tried before the Circuit Court, upon the evidence and exhibits in the same; and a decree was rendered for the complainant for thirty-five thousand five hundred dollars; or that the defendant, the executor of James Brown, should, on or before the 10th day of July then ensuing, convey to said plaintiff, with good

and legal title, a lot of ground of the value of thirty-one thousand five hundred dollars, containing sixty feet in front by one hundred and twenty feet in depth, situated on the batture in front of the suburb St. Mary, in New Orleans, the same that was adjudged to John Gravier by the Superior Court of the late Territory of Orleans, in the month of May, 1807; then said judgment, exclusive of costs, shall be deemed satisfied.

The defendant prosecuted this appeal.

The record from the Circuit Court of Louisiana brought up all the testimony exhibited in the cause before that Court.

Mr. Justice BARBOUR delivered the opinion of the Court.

This case comes before us, by appeal, from a decree of the Circuit Court of the United States, for the Eastern District of Louisiana.

It was a petition, according to the course of practice in that state, but which we consider as substantially a bill in equity, filed by the appellee, against the appellant, as executor of James Brown deceased; stating, that James and Samuel Brown had become bound for a valuable consideration, by them received, to convey to him a lot in New Orleans, by a notarial contract, bearing date the 21st of August, 1807; that he had in vain demanded of James Brown a fulfilment of his contract in relation to the lot; that said James Brown having died, and constituted the appellant his executor, by his last will, the executor had duly qualified as such, and taken upon himself the burden of its execution. And praying, that said Brown's executor might be condemned and adjudged, to convey and deliver to him, with good and valid title, the said lot, or to pay to him the value thereof; which he stated to be, at the time of filing his petition, thirty-seven thousand five hundred dollars.

Brown's executor answered, setting forth the origin and character of his right to the lot in question: that it was a lot in the batture of New Orleans; that a certain John Gravier had, by a judgment of the Superior Court of Orleans, recovered the batture in front of the suburb of Saint Mary; that he had sold two-thirds thereof to Peter Delabigarre, who sold one-half of his interest to Edward Livingston; that Delabigarre died, having by his will appointed certain trustees, with direction to make partition of said batture; that the trustees and Livingston did make partition thereof on the 14th of August, 1807, in which it was acknowledged that a certain lot therein described, which is the one now in question, was to be conveyed to James Brown, who had been employed as counsel in prosecuting the claim of Gravier to the said property; and the trustees agreed to convey to James Brown the said lot, out of their proportion of the batture; that it was in consideration of James Brown's right, such as before stated, in a lot, on the batture; that Keene made the conveyance in the notarial act of the 21st of August, 1807. He denies that Brown ever conveyed, or agreed himself to convey title to the lot to the plaintiff, but only agreed to

substitute plaintiff to himself, to receive such title as the representatives of Delabigarre and Livingston could make. He avers, that on the day after the notarial act aforesaid, to wit, the 22d of August, 1807, Brown addressed a letter to the executors of Delabigarre, acknowledging that the plaintiff had become the owner of the lot due to him by Edward Livingston, and requesting them to execute to the plaintiff the necessary deeds to convey the property.

Livingston, it seems, was the one who had employed Brown in Gravier's suit, to prosecute the claim to the batture; and the lot in question was to be Brown's compensation for his services.

The answer, then, relies upon certain correspondence between Keene and Brown, in relation to this lot, as explaining the understanding of the parties, as to the nature of the contract between them concerning it. The answer avers that Keene was one of the counsel for the corporation of New Orleans, in Gravier's suit against them for the batture; that he was perfectly acquainted with Brown's right to the lot; and that it was the right of Brown thus known to him, and not a title from and warranted by Brown, which was the consideration of the deed, or notarial act of sale, of the 21st of August, 1807, which is that on which Keene founded his right of recovery. The answer, finally relies on the prescription of one, five, ten, twenty, and thirty years. The Circuit Court decreed in favour of Keene, thirty-one thousand five hundred dollars, with costs; and that if Brown's executor, should, by a given day, convey to Keene a lot of that value, containing sixty feet in front, by one hundred and twenty feet in depth, situated on a part of the batture particularly described, then that the judgment, exclusive of costs, should be satisfied. From that decree, this appeal is taken.

The following is the notarial contract, or act of sale annexed to Keene's petition, and on which his claim is founded.

"Know all men by these presents, that I, Richard Raynal Keene, of the city of New Orleans, for and in consideration of a certain lot or parcel of land, consisting of sixty feet front and one hundred and twenty feet deep, situated on the batture, lately decreed and adjudged to John Gravier by the Superior Court holden in said city, have conveyed and transferred, and by these presents do convey and transfer unto James Brown and Samuel Brown, of said city, all my right, title, and interest in and to a certain tract or parcel of land, consisting of five acres front and forty acres deep, and situated at the English turn on the left bank of the Mississippi, be the same more or less; which said tract of land, I, the said Keene, purchased in the year 1805 of Helene Modeste Barbinnée Guinault, hereby warranting and defending unto the said James, and the said Samuel, all my right and title, as aforesaid, and unto all persons claiming under them."

The first question which arises, and that, indeed, which lies at the very foundation of the case, is, what is the true interpretation of this act of sale, or notarial contract?

On the part of the appellee, it is contended that it is an exchange;

that by the Civil Code of Louisiana, in every contract of exchange, each party is individually considered in the double light of vendor and vendee; that Brown being considered as vendor of the lot stated in the act of sale, and the lot being the consideration for Keene's conveyance, it follows, that he incurred the two obligations which the Civil Code imposes on all vendors, to wit, that of delivering, and that of warranting, the thing which he sells; that Brown has failed in the fulfilment of both of these obligations, and consequently, was liable to the decree which has been made, as the just equivalent for their non-fulfilment. Assuming the contract in question to be an exchange, there is no doubt but that the obligations attached to it, and the consequences which flow from it, are accurately stated in this summary of the appellee's argument.

But let us examine whether the contract in question is of the class to which this course of reasoning assumes that it belongs. In article 2630 of the Civil Code, an exchange is defined to be "a contract by which the contractors give to one another one thing for another, whatever it be, except money; for in that case, it would be a sale."

This definition proves, as the term exchange, ex vi termini, imports, that it is what is denominated in the Civil Code, a reciprocal contract; which, by article 1758 of that Code, is declared to be a contract, where the parties expressly enter into mutual engagements. The question then, is, does the act of sale now under consideration contain mutual engagements?

It commences in the first person: "I, Richard Raynal Keene." It is he, and he only, who speaks throughout the whole instrument; from its commencement to its termination; James and Samuel Brown are mentioned as grantees only; but they do not profess to grant to Keene, no part of the language being theirs; the intestimonium clause is also in the first person, thus: "In testimony whereof, I hereto subscribe my name, this 21st of August, 1807;" that is, I, Richard Raynal Keene. The engagement, then, contained in this instrument, is that of the person speaking in it, whose language constitutes the very instrument itself. But there is no mutual engagement on the part of the Messrs. Browns, because they do not speak; and therefore, the language of the grantor, professing to convey property, cannot have the effect of converting the grantee himself into a grantor, by the very terms which describe and treat him as grantee only. It seemed to be supposed, that the construction of the act of sale ought to be affected by the circumstance, that the Messrs. Brown also signed it. No such effect can be produced, because the difficulty still remains, that it is Richard Raynal Keene, and he only, who speaks in the instrument; their signature, therefore, cannot cause the language of him who alone speaks in the instrument, to be ascribed to those who do not.

Moreover, they signed it for no such purpose; they did it only, as we feel ourselves authorized to suppose, in accordance with the usage, where instruments are executed before a notary, as this was,

and for the purpose of indicating their willingness to accept the grant. That such is the purpose for which grantees sign acts of sale executed before a notary, is proven by the record in this case; for we find, that one in which Davis grants land to Jones is signed by Jones also; and states upon its face, that the grantee was present, and accepted the grant.

The truth is, that the lot of land, now in question, is not otherwise mentioned in the act of sale than as mere matter of recital by Keene, the grantor, as the consideration which moved him to make the grant. It is, therefore, undeniably true, that he alone speaks in the instrument, as well in regard to the land conveyed by him, as in relation to that which induced him to make the conveyance.

But there are other difficulties in the way of the appellee's construction. An exchange is an executed contract: it operates, per se, as a reciprocal conveyance of the thing given, and of the thing received in exchange. Now, so far from this ground being taken in Keene's petition, it will be seen that his allegation is, that the Messrs. Brown, for a valuable consideration received, became bound, by the act of sale of the 21st of August, 1807, to convey and deliver to him a lot of ground, as described in his petition; whereas, the argument at the bar assumes, that the act of sale was itself the conveyance.

Again: the lot in question is only described as to the extent of its front and depth, its situation on the batture, and the fact of its having been recently adjudged to Gravier by the Superior Court of Orleans; but it is not at all described by metes and bounds: and there were many lots on the batture to which the general description would equally apply. Now it enters into the very idea of an exchange, that the thing given or taken in exchange shall be specific, and so distinguishable from other things of the like kind as to be clearly known and identified. The necessity of the identification of the subject matter of an exchange will be rendered apparent by this consideration; that by article 2633 of the Civil Code, the exchanger, who is evicted by a judgment, of the thing he has received in exchange, has his choice either to sue for damages, or for the thing he gave in exchange. But he must first be evicted before his cause of action can accrue. Now it is obvious to remark, that this eviction cannot occur in a case where the thing supposed to have been received in exchange is not specific; is not designated so as to be distinguishable from many others of the like kind; and where, therefore, there could not be a violation of either of the two obligations imposed by the Civil Code on all vendors; 1st, that of delivering, and 2d, that of warranting the thing sold: not of the first, because, until it was designated, it could not be delivered; not of the second, because, not having been delivered, there could not be an eviction.

We think, then, that the act of sale in this case, was in no just sense an exchange; nay, that it in itself imported no contract what-

M 2                18

ever on the part of the Messrs. Brown to convey the lot in question to Keene.

If, indeed, it could be considered as amounting to a contract of any kind, it certainly could be nothing more than an executory one; and then, from the uncertainty and ambiguity upon its face, arising as well from the want of description of the lot, as from the reference to the recent adjudication of the title in favour of Gravier, it would be necessary to look beyond the act of sale to extrinsic evidence, for the purpose of removing such uncertainty and ambiguity. But as we have already said, we are of opinion that there is nothing on the face of the act of sale which amounts to any contract whatsoever, on the part of the Messrs. Brown, either executed or executory. Whatever claim, then, Keene may have, must rest for its support upon some other evidence in the record; and in this view, we proceed to examine the correspondence between Keene and James Brown, which took place in May, 1824.

On the 13th of May, of that year, Brown wrote to Keene, in answer to a note from Keene to Brown, which is not in the record, making inquiries in regard to the lot in question, as follows: "Col. Keene will find the contract between himself and Mr. Brown in the office of Pedesclaux, at New Orleans. It was drawn up, I think, by Lozano, who, I believe, yet resides there."

Without examining in detail several other letters from Keene to Brown, we pass at once to the examination of Brown's letter of May 15th, 1824, and of Keene's answer of the 17th of the same month, which will show the understanding of both the parties in relation to the subject. Brown in his letter writes as follows:

*"Paris, May 15, 1824.*

"Dear sir,—I am sorry I am unable to add any thing to the statement I sent you on the subject of the lot promised me by Mr. Livingston in New Orleans. The state of your memory will account for the imperfection of mine, which I trust is not a matter of so much importance, when I feel fully persuaded that the whole was reduced to writing. When last in New Orleans, Col. Davis applied to me on the same subject, and I told him that, as I had by a note to Mr. Livingston substituted you for myself as to any compensation for my argument in that cause, I had never said any thing as to my claim, but had left Mr. Keene to arrange it with Mr. Livingston. You knew the whole transaction just as well as I did, being in the habit of daily intercourse with Mr. Livingston and myself. Col. Davis told me he had bought the lot from you, but I did not ask him any questions respecting it. The size, situation, and boundaries were never described; and I would not have made any disposition of it, had I not understood you as having conversed with Mr. Livingston, and as consenting to take it. I feel fully persuaded that on arriving at New Orleans you will find our contract reduced to writing. May you not have passed the order I gave you to substitute you for my

expectations, from Mr. Livingston to Col. Davis, and have forgotten it? Be assured of my dispositions that you should obtain all I promised; and the best evidence of that disposition is afforded by the fact, that I have never claimed any thing from Mr. Livingston. I passed merely all my interest without any ultimate responsibility under the promise he made me to you, and left you to arrange it between you. I think the transaction must have taken place one or two years before you left the country.

"I am, sir, very respectfully,

"Your most obed't ser't,

(Signed)   "James Brown.

"Col. Keene."

In answer to this letter, Keene, on the 17th of May, writes to Mr. Brown as follows: "I certainly have no hesitation in acknowledging that your responsibility about the batture lot does not extend beyond your substituting me for yourself, in respect to the conveyance to be made by Mr. Livingston, in the sense explained by you."

From the correspondence which is here stated,—and there are other parts of Keene's letters, corroborating that just stated from his letter of the 17th of May,—we are satisfied that the contract between him and Brown was, that Brown agreed to substitute Keene in his place, and to all his right to the lot in question, and that Keene was to receive from or through Mr. Livingston a conveyance therefor: that it was not the agreement or understanding of the parties that Brown was to lie under any responsibility whatever as to the title: that Keene had knowledge of the origin and nature of Brown's interest, of the condition of the property, and the title to it: and that he agreed to take that interest, such as it was, and to receive a conveyance, not from Brown, but from the executors of Delabigarre, in whom the legal title was.

Thus understanding the agreement between the parties, we think that Brown acquitted himself of all obligation which it imposed upon him, when on the 22d of August, 1807, the very day after the act of sale from Keene, Brown wrote to the executors of Delabigarre the note in the record, requesting them to execute to Keene the necessary deeds to convey to him the lot in question. It was competent to Keene to have called upon Delabigarre's executors for a conveyance of the lot, and in the event of failure, or refusal, to enforce it by judicial proceedings. If he has, by neglecting to do so, suffered loss; he must abide the consequences of his own negligence; and has no claim whatever, in law or equity, to throw the loss on Brown or his representatives.

The views which we have thus presented being decisive of the case, it is unnecessary to examine the other questions, which were so fully discussed at the bar.

The decree is reversed, and cause remanded, with directions to dismiss the petition.

[Preston *vs.* Keene.]

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Eastern District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this Court, that the judgment and decree of the said Circuit Court be, and the same is hereby, reversed, with costs; and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to dismiss the petition.